T.C. Memo. 1997-431


UNITED STATES TAX COURT


ESTATE OF MARY D. MAGGOS, DECEASED, CATHERINE M. ADKINS,
SPECIAL ADMINISTRATOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20877-93.          Filed September 23, 1997.


Stanley Y. Mukai, Carmen J. SantaMaria, R. John Seibert,

Kimberly R. McCorkle, and William C. McCorriston, for

petitioner.[1]

Henry E. O'Neill, for respondent.

---

[1]The petition was prepared by Messrs. Victor H. Bezman and
Rex A. Guest, who withdrew from the case on Aug. 26, 1994.

MEMORANDUM OPINION

LARO, <u>Judge</u>:  Petitioner moves for summary adjudication under Rule 121(a),[2] arguing that the Court may enter a decision in its favor as a matter of law.  Respondent objects thereto, arguing that the Court must still decide questions of material fact in order to decide this case.  We agree with respondent.  We will deny petitioner's motion.  This case is not ripe for summary adjudication because material facts remain in dispute.

## Background

While residing in Honolulu, Hawaii, Mary D. Maggos (Ms. Maggos) petitioned the Court on September 27, 1993, to redetermine respondent's determination of a $2,229,350 deficiency in her 1987 Federal gift tax.  Respondent determined that Ms. Maggos' sale of 56.7 percent of the outstanding stock of Pepsi-Cola Alton Bottling, Inc. (PCAB), to PCAB in exchange for a $3 million promissory note was a transfer for less than adequate and full consideration.  Respondent determined that the fair market value of the transferred stock was $8,056,000 on the date of transfer and, accordingly, that Ms. Maggos had made a gift of $5,056,000 to her son, Nikita Maggos, who was PCAB's sole remaining shareholder.  Ms. Maggos had filed a 1987 Federal gift

---

[2] Rule references are to the Tax Court Rules of Practice and Procedure.  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue.

tax return reporting an $11,000 gift that she made to her daughter, Catherine Maggos Adkins. After taking into account the $10,000 exclusion that applied to this gift, respondent determined that Ms. Maggos' taxable gifts in 1987 totaled $5,057,000, rather than the $1,000 amount shown on her 1987 return. Respondent increased Ms. Maggos' taxable gifts by $5,056,000 to reflect this determination.

Ms. Maggos alleged in her petition that the value of her redeemed stock was not more than $3 million, and that the value of the promissory note was $3 million. On October 5, 1995, with leave of the Court, Ms. Maggos amended her petition to allege new facts. According to the amended petition, Ms. Maggos' stock was worth substantially more than $3 million at the time of the redemption, but Nikita Maggos and certain other persons who were close confidants of Ms. Maggos fraudulently induced her to sell her stock to PCAB for less than its full worth. Ms. Maggos alleges in her amended petition that she did not make a gift to Nikita Maggos because of this fraudulent inducement. Ms. Maggos alleges alternatively in her amended petition that her sale of the stock to PCAB was not a gift because the redemption was a "bona fide, arm's length transaction which proved to be a bad bargain" for her.

Ms. Maggos was born in 1906. She and her former husband, Gust Maggos, developed PCAB over the course of several decades.

PCAB, which is based in Alton, Illinois, is a regional bottler of Pepsi-Cola products in the Midwest.  At all relevant times prior to May 1987, Ms. Maggos owned 56.7 percent of PCAB's stock, and her only son, Nikita Maggos, owned the remaining stock.  Nikita Maggos was the president and a director of PCAB, and he oversaw the daily operation and management of the company.  Ms. Maggos had little, if any, participation in the operation or management of PCAB after the mid-1960's, having moved to Honolulu, Hawaii, from Alton, Illinois, at that time.

Following her move to Honolulu, Ms. Maggos retained Robert Hite, a lawyer in Hawaii, to update her estate tax plan.  The estate plan included Ms. Maggos' transfer of complete ownership of PCAB to her son, Nikita Maggos, which it sought to accomplish with minimal tax consequences.  Effective May 1, 1987, upon consultation with Mr. Hite and certain other advisers, Ms. Maggos entered into the redemption transaction with PCAB under which she received a promissory note from PCAB in exchange for her stock. The note provided for annual payments of interest at a rate of 8 percent per year and the payment of the $3 million face amount at the end of 10 years.  The note was structured so that Ms. Maggos would have an improved income stream to meet her extensive nursing care needs.  As of May 1, 1987, Ms. Maggos' stock in PCAB was worth substantially more than $3 million.

Following PCAB's redemption of Ms. Maggos' stock, Nikita Maggos investigated the possibility of selling PCAB and informed various bottling industry companies that his stock was available for sale. On April 28, 1989, Nikita Maggos sold all of PCAB's stock for cash and other consideration totaling more than $22 million; this consideration included the purchase price, the purchaser's assumption of PCAB's debt, PCAB's forgiveness of loans to Nikita Maggos, the receipt by Nikita Maggos of certain assets which had previously belonged to PCAB, and a noncompetition agreement between Nikita Maggos and the purchaser.

On August 23, 1994, Ms. Maggos commenced suit in the U.S. District Court for the District of Hawaii against Nikita Maggos and PCAB to recover damages for, among other things, fraud with respect to the redemption. On August 7, 1995, Ms. Maggos commenced suit in the First Circuit Court in Hawaii against Victor H. Bezman and E. Lawrence Helm, Jr., and their respective firms, alleging fraud and professional negligence. Mr. Helm, a certified public accountant, and Mr. Bezman, an attorney, advised Ms. Maggos on financial and tax matters, including the disposition of her PCAB stock. Mr. Helm had been Ms. Maggos' personal accountant since at least 1960.

Ms. Maggos died on September 3, 1996, and her daughter, Catherine Maggos Adkins, was appointed special administrator of Ms. Maggos' estate on October 24, 1996. Ms. Maggos' last will

and testament bequeathed the $3 million promissory note to Nikita Maggos.

## Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials of phantom factual issues. A decision on the merits of a taxpayer's claim can be made through summary judgment "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."  Rule 121(b). Because summary judgment decides against a party before trial, we grant such a remedy cautiously and sparingly, and only after carefully ascertaining that the moving party has met all requirements for summary adjudication.  Associated Press v. United States, 326 U.S. 1, 6 (1945); P & X Mkts., Inc. v. Commissioner, 106 T.C. 441, 443 (1996); Boyd Gaming Corp. v. Commissioner, 106 T.C. 343, 346-347 (1996).

The Court will not resolve disagreements over material factual issues in a summary judgment proceeding.  A fact is material if it "'tends to resolve any of the issues that have been properly raised by the parties.'"  Boyd Gaming Corp. v. Commissioner, supra at 347 (quoting 10A Wright et al., Federal Practice and Procedure:  Civil, sec. 2725, at 93 (2d ed. 1983)).

The burden of proving the absence of any genuine issue of material fact is on the moving party, and factual inferences are viewed in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Boyd Gaming Corp. v. Commissioner, supra at 347; Kroh v. Commissioner, 98 T.C. 383, 390 (1992); Preece v. Commissioner, 95 T.C. 594, 597 (1990).

Petitioner argues that its motion should be granted given that it is indisputable that Ms. Maggos did not make a gift of her stock to Nikita Maggos because she lacked a donative intent when she sold her stock to PCAB. We disagree. Property transferred by gift is subject to the Federal gift tax, sec. 2501(a); see also sec. 2511(a), and "Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift", sec. 2512(b). The transfers reached by the Federal gift tax spans are not confined to those that would be termed "gifts" under the common law. Whereas a gift in the common law sense requires a donative intent, delivery by the donor, and acceptance by the donee, 38 Am. Jur. 2d, Gifts, sec. 18, at 820 (1968), a gift for Federal gift tax purposes encompasses sales and other exchanges of property in which the value of the property transferred is more than the value of the consideration received.

Sec. 25.2512-8, Gift Tax Regs.; see also <u>Estate of Trenchard v.</u> <u>Commissioner</u>, T.C. Memo. 1995-121.  As stated by the Supreme Court, the "Congress intended to use the term 'gifts' in its broadest and most comprehensive sense" and "dispensed with the test of 'donative intent'" in lieu of "a much more workable external test, that where 'property is transferred for less than an adequate and full consideration in money or money's worth,' the excess in such money value 'shall, for purposes of the tax imposed by this title, be deemed a gift'".  <u>Commissioner v.</u> <u>Wemyss</u>, 324 U.S. 303, 306 (1945); see also <u>Crown v. Commissioner</u>, 585 F.2d 234, 238 (7th Cir. 1978), affg. 67 T.C. 1060 (1977). The Federal gift tax provisions, however, do not reach all transfers of property the value of which exceeds the consideration received in exchange.  The Federal gift tax does not attach to a transfer of property which is made in the ordinary course of business.  Sec. 25.2512-8, Gift Tax Regs.  For this purpose, a transfer is in the ordinary course of business only when it is bona fide, at arm's length, and free from donative intent.  <u>Id.</u>

This and other Courts look to a number of factors to help ascertain whether a transfer is a gift under section 25.2512-8, Gift Tax Regs.  See <u>Saltzman v. Commissioner</u>, T.C. Memo. 1994-641.  For example, disparities in value evidence a gift, <u>Fehrs v.</u> <u>United States</u>, 223 Ct. Cl. 488, 620 F.2d 255 (1980); see <u>Kincaid</u>

v. United States, 682 F.2d 1220, 1224 (5th Cir. 1982), as does a transfer that is made without an independent appraisal of the underlying property, Bergeron v. Commissioner, T.C. Memo. 1986-587. A gift also may arise from a transfer without an arm's-length negotiation over the purchase price, see Righter v. United States, 258 F. Supp. 763, 767-768 (W.D. Mo. 1966), revd. and remanded on another issue 400 F.2d 344 (8th Cir. 1968), when the effect of a transfer is to remove the donor from a business that he or she created, Galluzzo v. Commissioner, T.C. Memo. 1981-733, or when the moving impulse for a transfer is the desire to pass assets on to a family member, Robinette v. Helvering, 318 U.S. 184, 187-188 (1943). Transfers between family members are subject to strict scrutiny, and the presumption is that such transfers are gifts. Harwood v. Commissioner, 82 T.C. 239 (1984), affd. without published opinion 786 F.2d 1174 (9th Cir. 1986); Estate of Reynolds v. Commissioner, 55 T.C. 172, 201 (1970); Mercil v. Commissioner, 24 T.C. 1150, 1153 (1955); see Muserlian v. Commissioner, 932 F.2d 109, 112 (2d Cir. 1991), affg. T.C. Memo. 1989-493.

Our review of the record in the light most favorable to the nonmoving party (i.e., respondent) convinces us that genuine issues as to material fact remain to be decided by the Court. Petitioner claims that the record shows clearly that Ms. Maggos was defrauded because she transferred her PCAB shares for less

than adequate consideration, or, alternatively, that Ms. Maggos entered into a bad business deal when she agreed to the redemption. We disagree. The mere fact that Ms. Maggos filed two lawsuits against parties connected to the redemption is not enough to persuade us that she was defrauded in connection with the redemption, or that she entered into a bad business deal with respect thereto. Nor is it enough that Ms. Maggos received less than fair market value for her shares. Ms. Maggos sold her shares to PCAB without an independent appraisal of PCAB's value, and she bequeathed the promissory note to her son. The value of the note was substantially less than the value of her stock, and the price for the stock was not set through arm's-length negotiations. The effect of Ms. Maggos' transfer was to remove her from a family business that she helped build, passing total ownership of the business to her family's next generation with a conscious attempt on the part of Ms. Maggos to minimize the payment of tax that would be due on the passage. Bearing in mind that Ms. Maggos also was astute enough to file a 1987 gift tax return reporting a minimal gift, which, from a practical point of view, served to start the running of the period of limitations with respect to an assessment of a deficiency in gift tax for the year of redemption, we simply do not believe that petitioner prevails in this proceeding as a matter of law. Inferences may be drawn from the facts of this case which are consistent with

donative intent on the part of Ms. Maggos in effectuating the redemption, as well as the absence of an arm's-length transaction with respect thereto.  We defer our opinion on whether we will draw these inferences until the conclusion of a trial, after we have heard and viewed the persons connected with the redemption as they testify to their understanding of the surrounding facts. These witnesses, we are told, will include Ms. Maggos, whose testimony has been preserved through a videotaped deposition.  We will deny petitioner's motion.

To reflect the foregoing,

<u>An appropriate order</u>

<u>will be issued</u>.