T.C. Memo. 2002-292

UNITED STATES TAX COURT

PHYLLIS HERRMANN WITCHER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7234-01.          Filed November 26, 2002.

Phyllis Herrmann Witcher, pro se.

<u>W. Randolph Shump</u>, for respondent.

MEMORANDUM OPINION

PANUTHOS, <u>Chief Special Trial Judge</u>:  Respondent determined a deficiency in petitioner's 1998 Federal income tax of $1,728 and an addition to tax under section 6651(a)(1)[1] of $168.  After

_____

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

concessions by the parties,[2] the issues for decision are: (1) Whether the distributions petitioner received from her former husband's military pension are includable in gross income; (2) whether a settlement payment that petitioner received is includable in gross income; (3) whether petitioner is entitled to a deduction for depreciation on rental property; and (4) whether petitioner is liable for an addition to tax under section 6651(a)(1) for failure to file a return timely.

Petitioner resided in Wilmington, Delaware, at the time she filed her petition. The stipulation of facts and attached exhibits are incorporated herein by this reference. For convenience we combine findings of fact and conclusions.

1. Military Pension Distribution

Petitioner and Murray H. Witcher, Jr., (Mr. Witcher) were married in 1961. Mr. Witcher served in the U.S. Navy for a number of years during their marriage. Pursuant to a divorce proceeding between petitioner and Mr. Witcher in 1992, the Court of Common Pleas of Delaware County (court of common pleas),

---

[2] Respondent concedes that petitioner is entitled to deductions for fees and dues paid with respect to rental property. Respondent determined that petitioner received $2,340 in wages from Horizon Temps & Staffers, Inc. and $320 in capital gain and ordinary dividends. Petitioner does not dispute respondent's determination with respect to these issues and we deem them conceded. The parties agree that petitioner received $2,366 of income from a rental property, net of expenses. Because petitioner does not dispute that she received the income or that it is taxable to her, we deem this issue conceded.

Pennsylvania, concluded that Mr. Witcher's U.S. Navy pension was a marital asset available for equitable division pursuant to a Plan of Distribution and awarded petitioner 48.85 percent of the military pension, the value of which was determined by the court of common pleas to be $50,320.

Petitioner requested that the Defense Finance and Accounting Service (DFAS) pay the portion of the military pension directly to her. Petitioner received distributions totaling $5,836 from the military pension during the 1998 tax year.

Petitioner filed a Form 1040, U.S. Individual Income Tax Return, for the 1998 tax year on October 18, 1999. Petitioner filed a return that reflected her name, address, Social Security number, signature, date, and telephone numbers, but was otherwise blank; it did not reflect either income reported or deductions claimed.

Respondent determined in the notice of deficiency that the $5,836 that petitioner received from the military pension is includable in petitioner's gross income as pension and annuity income.

Gross income means all income from whatever source derived. Sec. 61(a). Pensions and retirement allowances paid by the government constitute gross income unless excluded by law. Sec. 61(a)(11); Weir v. Commissioner, T.C. Memo. 2001-184; Eatinger v.

Commissioner, T.C. Memo. 1990-310; sec. 1.61-11(a), Income Tax
Regs.

The Supreme Court in McCarty v. McCarty, 453 U.S. 210, 228
(1981), determined that military retirement pay could not be
attached to satisfy a property settlement incident to a divorce,
and was not subject to a State's community property laws.  In
response to McCarty, Congress enacted 10 U.S.C. sec. 1408 (2000)
in the Uniformed Services Former Spouses' Protection Act, Pub. L.
97-252, sec. 1002, 96 Stat. 730-735 (1982).  The provisions of 10
U.S.C. sec. 1408, Payment of retired or retainer pay in
compliance with court orders, relevant to the case at hand
provide as follows:

(a) Definitions.--In this section:

   (1) The term "court" means--

      (A) any court of competent jurisdiction of
   any State * * *

                  *     *     *     *     *     *     *

      (2) The term "court order" means a final decree of
   divorce, dissolution, annulment, or legal separation
   issued by a court, or a court ordered, ratified, or
   approved property settlement incident to such a decree
   (including a final decree modifying the terms of a
   previously issued decree of divorce, dissolution, * * *
   or a court ordered, ratified, or approved property
   settlement incident to such previously issued decree)
   * * * which--

                  *     *     *     *     *     *     *

        (B) provides for--

                *    *    *    *    *    *    *

            (iii) division of property * * *; and

        (C) in the case of a division of property,
    specifically provides for the payment of an
    amount, expressed in dollars or as a
    percentage of disposable retired pay, from
    the disposable retired pay of a member to the
    spouse or former spouse of that member.

                *    *    *    *    *    *    *

    (c) Authority for court to treat retired pay as
    property of the member and spouse.

        (1) * * * a court may treat disposable retired pay
    payable to a member for pay periods beginning after
    June 25, 1981, either as property solely of the member
    or as property of the member and his spouse in
    accordance with the law of the jurisdiction of such
    court. * * *

        (2) Notwithstanding any other provisions of law,
    this section does not create any right, title, or
    interest which can be sold, assigned, transferred, or
    otherwise disposed of (including by inheritance) by a
    spouse or former spouse. * * *

Congress intended that 10 U.S.C. sec. 1408 allow State courts to

treat a military pension "either as the property solely of the

member or as the property of the member and his spouse."  S.

Rept. 97-502, at 4 (1982); see also Pfister v. Commissioner, T.C.

Memo. 2002-198.

    Congress further noted that the bill:

    does not require any division of retired pay by a State
    court; nor does it prohibit such division.  Treatment
    of such retired pay--with certain limitations--
    generally would be dependent on the divorce and
    property laws applied by the courts of the jurisdiction

in which a divorce or other related decree is issued. [S. Rept. 97-502, at 4.]

A court in Pennsylvania has the authority to equitably divide marital property in an action for divorce. 23 Pa. Cons. Stat. Ann. sec. 3502(a) (West 1998). It has been clearly established in Pennsylvania that military pension benefits qualify as marital property and are subject to equitable distribution. 23 Pa. Cons. Stat. Ann. secs. 3501, 3502 (West 1998); Berrington v. Berrington, 409 Pa. Super. 355, 362 (1991), affd. 534 Pa. 393 (1993).

As indicated, income from property is taxed to the owner of the property. Eatinger v. Commissioner, T.C. Memo. 1990-310, (citing Helvering v. Clifford, 309 U.S. 331 (1940); Poe v. Seaborn, 282 U.S. 101 (1930); Lucas v. Earl, 281 U.S. 111 (1930)).

Under section 1041(a), no gain or loss is recognized on a transfer of property from an individual to a spouse or former spouse if the transfer is incident to a divorce. Such transfers are treated as nontaxable gifts, and the transferee has the transferor's basis. Sec. 1041(b). In enacting section 1041 in the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 421, 98 Stat. 793, Congress indicated its belief that "it is inappropriate to tax transfers between spouses." H. Rept. 98-432, part II, at 1491 (1984).

Petitioner was awarded 48.85 percent of her former husband's Navy retirement pay, and received $5,836 directly from the DFAS in 1998. Petitioner argues that she is not the legal owner of the military pension; therefore, the payments distributed to her are not includable in her gross income. The court of common pleas determined that the Navy pension was a marital asset available for equitable distribution incident to the divorce. The court of common pleas awarded her an "equitable distribution of 60 percent of the marital estate * * * as set forth in the plan". Petitioner has a right to those distributions that were awarded to her. 10 U.S.C. sec. 1408(c)(2).

Petitioner alleges that the military considers the military pension to be "pay" because it is taxed before a distribution (and the distribution is net of taxes).[3] Petitioner has not presented any reason why the distributions to her, if they are "pay", are not includable in her income.

Petitioner argues that the military pension distributions she received are excludable from gross income by virtue of section 1041. An owner of an interest in a military retirement pension, like other pensions, has a right to receive future

---

[3] Petitioner relies on 10 U.S.C. sec. 1408(a)(4) and Eatinger v. Commissioner, T.C. Memo. 1990-310 for support for the argument that the military pension distribution is net of income taxes. Congress amended the statute in the National Defense Authorization Act for Fiscal Year 1991, Pub. L. 101-510, sec. 555(a)-(d), 104 Stat. 1569, 1570, and income tax withholding is no longer taken into account in determining disposable military retired pay under 10 U.S.C. sec. 1408(a)(4)(C).

income from the retiree's employer. Eatinger v. Commissioner, supra. The pension distributions that petitioner received directly from DFAS represent a division of a military pension.

If we were to assume, arguendo, that the division of the military pension effected a transfer of property to petitioner subject to section 1041, petitioner has no basis in such property, and thus the full amount of the pension distribution to her is includable in her income. Sec. 1041(b).

The case at hand can be distinguished from Balding v. Commissioner, 98 T.C. 368 (1992), in which this Court determined that payments to the taxpayer, a former spouse of a retired military serviceman, were transfers incident to a divorce under section 1041, and income was not recognized by the taxpayer. In Balding, the taxpayer received cash payments directly from her former spouse in consideration of her agreement to relinquish all claims to the former spouse's military retirement pay. Id. at 369. The Court viewed the taxpayer's release of rights to the military retirement pay in exchange for the settlement payments as a transfer of property. Id. at 373.

Petitioner, in contrast, received distributions from the DFAS as a result of her retained ownership interest in her former spouse's military pension. Sec. 61(a)(11). We conclude that the distributions to petitioner in 1998 from the military pension are includable in her gross income. See Eatinger v. Commissioner,

T.C. Memo. 1990-310.  Respondent's determination with respect to this issue is sustained.

2.  Lawsuit Settlement

In 1994, petitioner filed a complaint in the United States District Court for the Eastern District of Pennsylvania against the Wilmington Trust Company and other parties for breach of contract, breach of the implied covenant of good faith and fair dealing, defamation due to reporting a charge-off to a credit reporting service, fraud, and the intentional infliction of emotional distress.  Pursuant to a settlement of the lawsuit petitioner received $1,500 in 1998.  The parties' basis for settlement is not set forth in the settlement document.

Respondent determined in the notice of deficiency that the payment received in settlement of the lawsuit was includable in petitioner's income.

Gross income does not include the amount of any damages (other than punitive damages) received, whether by suit or agreement, and whether as lump sums or periodic payments, on account of personal physical injuries or physical sickness.  Sec. 104(a)(2).[4]  For purposes of paragraph (2), emotional distress

---

[4]  Prior to the amendment of sec. 104(a)(2) by the Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605(a), 110 Stat. 1838-1839, effective for amounts received after Aug. 20, 1996, gross income did not include damages received on account of personal injuries or sickness.  Personal injuries included nonphysical injuries.  Commissioner v. Schleier, 515 U.S. 323, 329 n.4 (1995) (citing United States v. Burke, 504 U.S. 229, 235 n.6 (1992)).

shall not be treated as a physical injury or physical sickness, except to the extent of any damages not in excess of the amount paid for medical care attributable to the emotional distress. Sec. 104(a). Damages received that are excludable from gross income include an amount received through a settlement agreement entered into in lieu of prosecution of a legal suit or action based upon tort or tort type rights. Sec. 1.104-1(c), Income Tax Regs.

While the defamation and emotional distress causes of action alleged in the lawsuit complaint are injuries personal to petitioner, see, e.g., Threlkeld v. Commissioner, 87 T.C. 1294, 1299 (1986), affd. 848 F.2d 81 (6th Cir. 1988); Freeman v. Commissioner, T.C. Memo. 2001-254 (breaching implied covenant of good faith is not a personal injury), we are unable to find that any portion of the settlement was paid to petitioner as compensation for physical injury or physical sickness. The settlement document pursuant to which the lawsuit was settled does not provide the basis for the parties' settlement. Petitioner has not argued that she received the $1,500 settlement on account of a physical injury or physical sickness. Sec. 104(a)(2). We conclude that section 104(a)(2) is not applicable to exclude the $1,500 payment received from gross income because petitioner did not receive the settlement on account of a physical injury or physical sickness. Respondent is sustained with respect to this issue.

3.  Depreciation Deduction

Petitioner owned a condominium in Pennsylvania that she held as rental property in 1998.  Petitioner moved into the condominium in January 2000 after being forcibly ejected from the house in which she had lived for the previous 20 years in a foreclosure action.  Petitioner alleges that she is entitled to a depreciation deduction on the condominium, which she held as rental property.

The notice of deficiency disallowed the claimed depreciation deduction on the basis that petitioner failed to establish entitlement to the deduction.

A taxpayer may be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear of property held for the production of income.  Sec. 167(a)(2).  A taxpayer is generally required to keep sufficient records to enable the Secretary to determine the taxpayer's correct income tax liability.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Petitioner did not provide any testimony or documentary evidence concerning the amount of depreciation on the rental property that she believes she is entitled to deduct or her adjusted basis in the rental property.[5]  The burden is on petitioner to substantiate the depreciation deduction.  Rule

_____

[5]  The Court held the record open after trial to allow petitioner the opportunity to supplement the record on this issue; however, no additional evidence was offered and a supplemental stipulation was not filed.

142(a)(1).[6]  We conclude that petitioner has not established that she is entitled to a deduction for depreciation.

4.    Section 6651(a)(1) Addition to Tax

Section 6651(a)(1) imposes an addition to tax on the failure to file timely any return required to be filed, unless it is shown that such failure is due to reasonable cause and not due to willful neglect.

The Secretary has the burden of production in any court proceeding with respect to the liability of the individual for any penalty, addition to tax, or additional amount imposed.  Sec. 7491(c); see Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Petitioner had requested, and was granted, extensions of time to file her return until August 15 and August 26, 1999. Petitioner stipulated that she filed her return for the 1998 tax year with respondent on October 18, 1999.  Petitioner testified that she thought that she filed an additional request for an extension to file her return extending the filing date to October 15, 1999.  After she was evicted from her house in July 1999, petitioner in January 2000 permanently moved into the condominium that she owned and had previously rented out.  Petitioner asserts that she was living in temporary housing and lacked

---

[6]  Sec. 7491(a) does not apply to place the burden of proof on respondent because petitioner has neither alleged that sec. 7491 is applicable nor established that she complied with the requirements of sec. 7491(a)(2)(A) and (B) to substantiate items, maintain required records, and fully cooperate with respondent's reasonable requests.

access to her belongings prior to January 2000.  While living in temporary housing, her belongings were in storage.

We conclude that respondent has produced sufficient evidence indicating that petitioner failed to file her return timely and the application of section 6651(a)(1) is appropriate.  We also conclude that petitioner has not demonstrated that her failure to file the return timely was due to reasonable cause.  Accordingly, respondent's determination is sustained.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.